**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:19-CR-135-PPS-JPK |
| | ) | |
| LAVELLE A. GORDON, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Lavelle A. Gordon sold a load of crack cocaine five times to a confidential

informant and on one occasion accepted guns instead of money as the means of

exchange.  Gordon was a three-time convicted felon, and this put him a difficult

situation of facing the dreaded Armed Career Criminal Act and its 15-year mandatory

minimum. The case wasn't particularly defensible (everything was on videotape) so his

lawyer set about negotiating a deal where the government would drop the ACCA. His

efforts were successful, and Gordon was ultimately sentenced to ten years

imprisonment. He now claims his lawyer was ineffective in his representation of him

and so he has filed a *pro se* motion to vacate, set aside, or correct a sentence pursuant to

28 U.S.C. § 2255. For the following reasons, the motion is denied.

### Background

In early 2019, the government obtained information that Gordon was selling

fairly large quantities of crack cocaine and Xanax. Gordon was a rich target for the

government; he had a rather prolific criminal history and was (at least for some time) a

known gang member. [DE 14; PSR at 8-15, 16.] So, they got a confidential informant and over the course of the next month or so, made a number of undercover buys of crack cocaine from Gordon. [*Id.* at 6.] At some point along the way, the government decided to elevate matters by seeing if Gordon would be interested in accepting guns instead of money as payment for the crack, and he whole heartedly agreed. [DE 36 at 2-6.]

Here's how the deal with the guns came to pass. The CI told Gordon he had pictures of the available guns and offered to meet the next day. Gordon wasn't the least bit hesitant stating, "we can do that shit like, asap, asap, like, whenever I'm ready." *Id.* The next day, Gordon and the CI met to exchange crack cocaine for cash and the CI showed Gordon pictures of 2 Glock pistols and an AK-47 rifle. *Id.* Gordon stated "That's what we need bro. Yes sir, we need that. We got problems right now…" and asked how much crack cocaine the CI wanted in exchange. *Id.* at 3-4. The CI suggested 42 grams for all three guns and Gordon stated he would get back to the CI. *Id.* at 4. Later that night, Gordon and the CI discussed the exchange over three telephone calls and continued negotiations the following week. *Id.* at 4-5. After some back and forth, the pair agreed to exchange two Glock pistols for 20 grams of crack cocaine. *Id.* at 5. On May 29, 2019, Gordon, the CI, and an ATF undercover agent made the exchange and Gordon was immediately arrested. *Id.*

Gordon was originally charged by way of a criminal complaint with multiple counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Id.* at 5-6; [DE 1.]

Page 2 of 13

Because Gordon had three qualifying convictions, he was also eligible for treatment as an Armed Career Criminal under 18 U.S.C. § 924(e) and the 15-year mandatory minimum that goes along with it. [PSR at 20.] Gordon's counsel well recognized the pickle Gordon found himself in, and in the following months, he negotiated extensively with the government. Those efforts led to an agreement whereby Gordon would plead guilty to an information charging him with one count of distribution of crack cocaine (Count One) and possessing a firearm during and in relation to a drug crime (Count Two) in violation of 18 U.S.C. § 924(c).  Importantly, the agreement spared Gordon from the Armed Career Criminal Act on a case that appeared to be a lay down for the government. The agreement, made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), further recommended a Guideline range of 70-87 months (offense level 21 and criminal category V) and a statutory mandatory consecutive sentence of 60 months on Count Two. [DE 2 at 3-4.]  This was a tremendous result for Gordon taking his sentence from a mandatory minimum of 15 years down to recommended sentence of 147 months (87 + 60) on a case where there appears to have been no defense.

On November 26, 2019, Judge Kolar held a plea hearing where Gordon verbally stated he understood his rights and the penalties involved, the nature of the charges, and that his plea was being made knowingly and voluntarily.  [DE 35.] He then gave a robust factual basis for the crimes he was pleading guilty to including agreeing to the possession of the subject firearms.  [*Id*. at 20-24.]

On June 18, 2020, I held an initial sentencing hearing, during which I asked whether Gordon or the CI initiated the idea of exchanging guns for drugs. [DE 22, 29 at

8.] Recall that prior to the last deal, this was a drug case and nothing more. The PSR was ambiguous on whose idea it was to exchange guns for drugs on that final deal, the government (through its CI) or Gordon, and I found the answer to that question important in deciding the appropriate sentence. [DE 29 at 6-12.] The sentencing was rescheduled to give the parties time to answer that question.

After receiving supplemental filings, on July 2, 2020, Gordon appeared for sentencing. [DE 24.] The government and defense agreed that the exchange of guns for drugs was initiated by the CI, not Gordon. [DE 26 at 26.] Gordon's attorney argued for a lesser sentence because the exchange of the guns for drugs was initiated by the CI. *Id.* at 8. Here's what he said on the issue:

> by introducing guns into the transaction, that places [Gordon] in a position where as soon as he accepts that offer by the government, with his criminal history, that places him in a position where either (A) he faces the armed career criminal [enhancement], or [B] as we negotiated in this case, that the government wouldn't file that charge but that [Gordon] would plead guilty to the 924(c) charge.

*Id.* at 8. Gordon told me he discussed the presentence report with his attorney and had his questions answered. *Id.* at 3. After hearing from the attorneys and the defendant, I deviated from the plea agreement on count I and sentenced Gordon to 60 months instead of 87 months, and 60 months on count II, both counts to be served consecutively, followed by three years of supervised release. [DE 24.] While I fully understood the government wanting to take a violent repeat offender (who was back at it) off the streets, I found it somewhat mitigating that it was the government, and not Gordon, who introduced the idea of guns into the relationship. (It seems likely that

Gordon would have skipped along happily just selling the CI drugs but for the government's action.) While plainly this was not a defense to the crime, nor did it even amount to sentencing entrapment, I found it mitigating, nonetheless.

Gordon now seeks to vacate, set aside, or correct his sentence due to ineffective assistance of counsel. He argues his counsel failed in four ways: (1) by failing to argue or seek a sentence reduction for Count One; (2) by failing to argue sentencing entrapment at sentencing; (3) by failing to review the facts of the case with him before having him plead guilty; and (4) by not arguing racial bias at sentencing. [DE 30, 31.] He argues that his attorney's failure to raise these issues amounted to ineffective assistance of counsel.

### Discussion

A prisoner convicted of a federal crime may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Ineffective assistance of counsel claims may be raised under § 2255 as a violation of the Sixth Amendment. *Massaro v. United States*, 538 U.S. 500, 504 (2003). But petitioners face a steep hill in this circumstance. "Motions to vacate a conviction or sentence ask the district court to grant an extraordinary remedy to one who already has had an opportunity for full process." *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

To succeed on an ineffective assistance of counsel claim, a convicted defendant must prove both that (1) counsel's performance fell below an objective standard of reasonableness; and (2) defendant was prejudiced meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 690-94 (1984); *see Missouri v. Frye*, 566 U.S. 134, 147 (2012) (prejudice occurs when there is a "reasonable probability" that the sentence would result in less prison time). However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and review is "highly deferential." *Strickland*, 466 U.S. at 689. In the context of guilty pleas, as is the case here, the standard for ineffective assistance of counsel is that 1) counsel was deficient (based on an objective standard) in his negotiations of the plea, and 2) that but for the error, the defendant would not have pled guilty and would have insisted on a trial instead. *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2018); *see United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005).

First, Gordon argues that he is entitled to relief because his attorney failed to seek a reduction at sentencing. [DE 31 12-15.] But that is simply not true. During the sentencing hearing on July 2, 2020, his attorney specifically argued for a reduced sentence of two or three Guideline levels. [DE 26 at 7-8]. Gordon even concedes that his attorney sought a reduction at sentencing. [DE 31 at 9.] More importantly, Gordon's attorney spent months negotiating with the government, pre-charge, so that Gordon would not be charged with a count under the Armed Career Criminal Act, which would have subjected him to a 15-year mandatory minimum sentence (in addition to what he

Page 6 of 13

would have been facing on the drug case). Gordon's attorney's performance was not

deficient. Far from it.  He recognized the real concern in the case (the ACCA) and set

out to avoid that hefty provision at all cost. And his efforts were successful. What's

more, Gordon faced a sentencing range under the Guidelines of up to 147 months (87

months on Count One and 60 months on Count Two). In considering his lawyer's

comments at sentencing, I took off an additional 27 months from Count One for a total

of 120 months imprisonment. Although it may be a difficult pill for Gordon to swallow,

this was a tremendous result for him. In sum, Gordon has not shown that his attorney's

actions were deficient in any way.

Second, Gordon argues that his attorney failed to investigate the defense of

sentencing entrapment. Sentencing entrapment "occurs when the government causes a

defendant initially predisposed to commit a lesser crime to commit a more serious

offense." *United States v. Garcia*, 79 F.3d 74, 75 (7th Cir. 1996). To succeed on a

sentencing entrapment claim, Gordon "must show (1) that he lacked a predisposition to

commit the crime, and (2) that his will was overcome by 'unrelenting government

persistence.'" *United States v. Turner,* 569 F.3d 637, 641 (7th Cir. 2009) (internal citation

omitted).

The facts do not come close to supporting sentencing entrapment here so there is

no way to conclude that Gordon's attorney was ineffective for failing to raise the issue.

In other words, Gordon's will was not "overcome by 'unrelenting government

persistence.'" *Turner*, 569 F.3d at 641. Between May 1, 2019 and May 29, 2019, Gordon

and the CI had multiple, lengthy discussions about exchanging crack cocaine for guns.

Throughout the conversations with the CI, Gordon spoke affirmatively and positively about the exchange. He did not say anything to indicate he did not want to be involved in the exchange and there is no indication that he was pressured at all by the CI. In fact, Gordon's responses not only indicated that he was willing to make the exchange, but that he was excited for the opportunity and wanted to move forward with it immediately. [DE 36 at 3-4] ("[W]e can do that shit like, asap, asap, like, whenever I'm ready." "That's what we need bro. Yes sir, we need that. We got problems right now…"). The CI brought Gordon pictures of the guns and Gordon continued to want the Glocks, even if he changed his mind about the AK-47. After nearly a month of negotiations, Gordon and the CI came to an agreement and closed the deal on the day of Gordon's arrest.

Gordon complains that his attorney did not know of the concept of sentencing entrapment and his lack of knowledge and strategy led to ineffective assistance of counsel. But there was no basis for arguing sentencing entrapment; it simply didn't apply. So, while Gordon's attorney may not have argued sentencing entrapment, he nonetheless raised the perceived unfairness of the government jacking up a sentence by bringing guns to a drug party.  As noted above, here's how he framed it at sentencing:

> . . . by introducing guns into the transaction, that places [Gordon] in a position where as soon as he accepts that offer by the government, with his criminal history, that places him in a position where either (A) he faces the armed career criminal [enhancement], or [B] as we negotiated in this case, that the government wouldn't file that charge but that [Gordon] would plead guilty to the 924(c) charge.

[DE 26 at 8.] I do not find that that Gordon's attorney's actions were unreasonable or that he was prejudiced at sentencing because of sentencing entrapment. Indeed, I took it all into consideration when I sentenced Gordon.

> Sentencing entrapment whereby the sentencing skyrockets mostly because of, you know, the actions of the confidential informant who is plainly acting at the behest of some federal agent. This kind of thing just doesn't happen. It happens because the federal agent knows who the target is and they're attempting to hit him with a 924(c) and perhaps an armed career criminal. That's what's going on here. So I'm taking that into consideration, none of which is to say I'm in any way underplaying or discounting the seriousness of this offense, as I already stated.

[DE 26 at 11-12.]

I'll concede that my use of the term "sentencing entrapment" was a bit misleading. It was simply my short cut way of commenting on the perceived unfairness of the government injecting guns into the story even though it didn't meet the standard for sentencing entrapment as set out by the Seventh Circuit.  In all events, as previously stated, I deviated from the plea agreement's recommended sentence by 27 months to reflect that concern. As such, because Gordon has not adequately shown ineffective assistance of counsel regarding sentencing entrapment or how he was prejudiced at sentencing, neither of the required *Strickland* prongs are satisfied here.

Next, Gordon argues that his attorney's strategy was deficient, in that he allegedly failed to review the facts of the case, investigate the prosecution's case and possible defenses, was unaware of the law in different circuits, and urged him to enter a plea of guilty. [DE 31 at 8-9.] Gordon's argument rests in trial strategy, which is up to his attorney's discretion unless it is objectively unreasonable. *Resnick v. United States*,

2021 U.S. App. LEXIS 22935, at *14 (7th Cir. Aug. 3, 2021). Prior to entering into a plea

agreement, an attorney must "make an estimate of a likely sentence" and "communicate

the result of that analysis before allowing his client to plead guilty." *Gaylord*, 829 F.3d at

506 (counsel was ineffective for failing to consult with the defendant about a potential

challenge to a sentencing enhancement in order to make a knowing and voluntary

guilty plea). However, this does not mean that an attorney must raise every potential

sentencing challenge with their client or "obtain the [client's] consent to 'every tactical

decision,' particularly those within an attorney's expertise." *Harris v. United States*, 2021

U.S. App. LEXIS 27313, at *15-16 (7th Cir. Sep. 10, 2021) (citing *Florida v. Nixon*, 543 U.S.

175, 187 (2004)); s*ee Strickland*, 466 U.S. at 688-89 (attorneys have "wide latitude [] in

making tactical decisions" and "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that

is, the defendant must overcome the presumption that . . . the challenged action might

be considered sound trial strategy." (internal citation and quotations omitted.))

The main problem with Gordon's argument is that he has not presented any facts

to overcome the strong presumption that counsel's conduct here was reasonable and

how exactly Gordon was prejudiced by the alleged conduct. *Strickland*, 466 U.S. at 689.

While I am not privy to the entire investigation Gordon's attorney underwent, Gordon

has not specifically pointed to anything that could be considered objectively

unreasonable conduct by his attorney. His allegation doesn't go any further than a

blanket accusation that "counsel did not investigate." [DE 31 at 8.] But this blanket

statement is belied by the fact that at sentencing, Gordon's attorney stated that he

reviewed all the videos of the undercover buys and they were conclusive of Gordon's guilt, and thus he turned his attention to avoiding the ACCA (which he successfully did). [DE 29 at 10.]  In sum, there is nothing in the record to support that Gordon's attorney acted unreasonably in his investigation of the case. Rather, Gordon told both Judge Kolar at the plea hearing and me at sentencing that he reviewed the facts of the case with his attorney, had ample opportunity to discuss his case, and had all his questions answered prior to the hearing. [DE 8; DE 26 at 3, 7.]

Gordon also makes a throw away argument that his counsel did not cite law in the 8th and 9th Circuits regarding constructive possession. [DE 31 at 13.] The argument is that his lawyer was ineffective for failing to argue that because he was not in possession of the firearm, he could not have been found guilty of possessing a firearm during a drug related offense. *Id*. Forget for the moment that this case is governed by the law of the Seventh Circuit, the government nonetheless did present sufficient evidence to show that Gordon was in possession of the guns. [DE 33 at 22.] And when there is evidence of actual possession, the issue of constructive possession becomes irrelevant.  In sum, in the face of overwhelming evidence of actual possession, any discussion of constructive possession would have been an utter waste of time.  Gordon has therefore failed to overcome the strong presumption that his attorney's decision to not raise the issue was a strategic choice that was objectively reasonable.

Finally, Gordon argues that his attorney failed to argue racial bias at sentencing. [DE 31 at 16.] Gordon cites to the notorious ATF stash house cases which many courts have roundly criticized but nonetheless upheld. *See e.g. United States v. Brown*, 299 F.

Supp. 3d 976 (N.D. Ill. 2018).  For starters, this case doesn't even come close to the stash house paradigm and had counsel raised it as at sentencing, I would have quickly dismissed it.  So, there was no prejudice in failing to raise the issue.  I reiterate that an attorney has "wide latitude [] in making tactical decisions" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 688-89 (internal citation and quotations omitted). Given the vast difference between this case and the "stash house "cases, it was a wise tactical choice for Gordon's attorney to decide not to raise it, a decision which is unassailable in a claim of ineffective assistance of counsel.

## Certificate of Appealability

Finally, I must consider whether to grant Gordon a certificate of appealability on any of his claims. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Gordon must show that reasonable jurists could debate whether his petition should have been resolved differently.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotations and citation omitted).   I am entirely unpersuaded that reasonable jurists could reach opposite conclusions about Gordon's right to relief on the grounds asserted in his motion under

§2255, and I will deny a certificate of appealability.  If Gordon wishes to appeal this

Opinion and Order denying his § 2255 motion, he must seek a certificate of

appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

ACCORDINGLY:

Lavell Gordon's motion to vacate, set aside or correct his sentence under §2255

[DE 30] is **DENIED**.

A certificate of appealability is **DENIED**.

**SO ORDERED.**

**ENTERED: December 28, 2021.**

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT